**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathryn A. Milun, a married woman,<br><br>Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents, a political subdivision of the State of Arizona,<br><br>Defendant. | No. CV-07-1555-PHX-DGC<br><br>**ORDER** |

Plaintiff Kathryn Milun filed a complaint against Defendant Arizona Board of Regents asserting claims for unlawful employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Dkt. #1. Defendant has filed a motion for summary judgment. Dkt. #61. The motion has been fully briefed. Dkt. ##64, 71. For reasons stated below, the Court will grant the motion in part and deny it in part.[1]

**I.     Background.**

Plaintiff worked as an assistant professor of anthropology at Rice University from 1991 until 2000. She obtained a doctorate degree in comparative literature and cultural studies in 1993. Plaintiff revised her doctoral dissertation into a book manuscript entitled

---

[1] Plaintiff's request for oral argument is denied because the parties have had an opportunity to fully brief the issues and oral argument will not aid the Court's decision. *See, e.g.*, *Lake at Las Vegas Investors Group, Inc. v. Pac. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

"Pathologies of Modern Space" ("Pathologies manuscript"). While at Rice, Plaintiff took six weeks of maternity leave in 1994 and 1996.

In July 2000, Plaintiff began working as an assistant professor in the English and justice studies departments of Arizona State University ("ASU"). Plaintiff was eligible to be considered for promotion to associate professor with tenure no later than the 2005-2006 school year. Plaintiff was expected to meet the English department's tenure requirements.

In order to be considered for tenure at ASU, English department faculty must have high quality teaching and service and generally must have produced eight substantial publications or a book and two other publications. ASU conducts two probationary reviews during which retention decisions are made. In the second and fourth years of employment, independent reviews about a faculty member's progress toward tenure are made at the following levels: the department personnel committee, the department chair, the dean's advisory committee, the college dean, and the university provost. The faculty member may be retained with a regular contract, a conditional contract, or a terminal contract. ASU's president makes the final decision to grant or deny tenure after independent reviews by the department personnel committee, the department chair, the dean's advisory committee, the college dean, the university promotion and tenure committee, and the university provost.

In November 2001, Plaintiff was awarded a regular contract for the 2002-2003 school year. In September 2003, the English department personnel committee voted in favor of renewing Plaintiff's contract on the condition that she meet the submission deadlines for her Pathologies manuscript and various articles listed in her fourth-year review packet, participate in teaching workshops, and obtain a teaching mentor. The department chair concurred with that recommendation. The dean's advisory committee voted unanimously to award Plaintiff a conditional contract requiring Plaintiff to publish her Pathologies manuscript, publish at least four of the articles in progress, and demonstrate improvements in the classroom. Dean David Young recommended that Plaintiff be awarded a terminal contract. It was Dean Young's opinion that the scholarly research and teaching records indicated that Plaintiff was not making satisfactory progress toward tenure. Dean Young

1  noted that Plaintiff's "scholarly record is simply not sufficient to warrant recommending a
2  regular or conditional contract, especially for a faculty member who is ten years past her
3  Ph.D." On November 25, 2003, Provost Milton Glick decided to give Plaintiff a terminal
4  contract for the 2004-2005 school year.

5  Plaintiff sought reconsideration of that decision and met with Associate Dean Simon
6  Peacock on December 9, 2003.  In subsequent letters to Associate Dean Peacock, Plaintiff
7  noted Dean Young's comment about Plaintiff being ten years past her Ph.D and questioned
8  how her maternity leaves at Rice University were being considered in the tenure review
9  process. On December 24, 2003, Provost Glick offered Plaintiff a conditional contract for
10 the 2004-2005 school year.  On January 28, 2004, Dean Young sent Plaintiff a letter
11 outlining the terms of the contract.

12 On March 29, 2005, the dean's advisory committee voted unanimously to award
13 Plaintiff a terminal contract.  Dean Young agreed with that recommendation.  On April 13,
14 2005, Provost Glick notified Plaintiff that she would receive a terminal contract for the 2005-
15 2006 school year.

16 In a letter dated June 7, 2005, Plaintiff was informed that she would be considered for
17 promotion and tenure during her terminal contract year. On September 27, 2005, the English
18 department's personnel committee rendered a split vote (3-3) on whether Plaintiff should
19 receive tenure.  Department Chair Neal Lester recommended that Plaintiff be denied tenure
20 and the dean's advisory committee voted unanimously (9-0) in favor of that recommendation.
21 Dean Young and Provost Glick agreed.  On March 3, 2006, the promotion and tenure
22 committee voted 6-4 in favor of granting Plaintiff tenure. On April 6, 2006, ASU President
23 Michael Crow denied Plaintiff tenure on the ground that her teaching and scholarly
24 production did not meet ASU's standards of excellence. Plaintiff's last date of employment
25 with ASU was July 1, 2006.

26 **II.    This Suit.**

27 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity
28 Commission ("EEOC") alleging that she was denied tenure because of her sex and in

retaliation for complaining about employment discrimination. The EEOC issued a determination finding reasonable cause to believe that Defendant had violated Title VII. Plaintiff was issued a right to sue letter on May 29, 2007.

Plaintiff commenced this action on August 17, 2007. Dkt. #1. Plaintiff alleges that the conditional contract she was offered for the 2004-2005 school year (1) was discriminatory because it imposed more stringent requirements than those imposed by ASU's own guidelines and on other members of the English department and (2) was in retaliation for questioning how her maternity leave was being considered in the tenure review process. *Id.* ¶¶ 9-14, 22. Plaintiff further alleges that the denial of a customary departure year following the adverse tenure decision constitutes unlawful retaliation. *Id.* ¶ 23.

**III.   Summary Judgment Standard.**

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**IV.   Plaintiff's Discrimination Claim.**

    **A.   Plaintiff has established a prima facie case of discrimination.**

Under Title VII, an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of her sex. 42 U.S.C. § 2000e-2(a)(1). Plaintiff carries the initial burden to establish a prima facie case of sex discrimination by showing (1) that she belongs to a protected class, (2) that she met objective tenure qualifications, (3) that she was denied tenure, and (4) that a male

1    with similar qualifications was granted tenure.  *See Lynn v. Regents of the Univ. of Cal.*, 656
2    F.2d 1337, 1341, 1344 (9th Cir. 1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
3    802 (1973).

4    Defendant does not dispute the first and third elements of the prima facie case:  that
5    Plaintiff belongs to a protected class and ultimately was denied tenure.  No additional proof
6    is required on these elements.

7    Plaintiff has not established a prima facie case, Defendant contends, because Plaintiff
8    was not qualified for tenure and was actually treated more favorably than other tenure-
9    eligible faculty in the English department.  Dkt. #61 at 8-10.  Defendant argues that Plaintiff
10   was not qualified because at the time the tenure decision was made Plaintiff was still revising
11   her Pathologies manuscript and therefore had not published at least one book as required to
12   receive tenure.  *Id.* at 8-9.  Plaintiff has presented evidence that to attain tenure she was
13   required only to have a book in press and her Pathologies manuscript was under contract with
14   Routledge Press at the time of her tenure decision.  Dkt. #65-7 at 2, 44; *see* Dkt. #62-7 at 2-
15   11, 32.  Moreover, the promotion and tenure committee voted in favor of granting Plaintiff
16   tenure (Dkt. #62 ¶ 128), and members of the English department's personnel committee
17   specifically found that Plaintiff had met the numerical publication requirement for tenure.
18   Dkt. #65-7 at 3, 7; *see* Dkt. #62-7 at 32-35, 53.

19   Defendant argues that Plaintiff was treated more favorably than other faculty because
20   she was allowed the unique privilege of being considered for tenure during her terminal
21   contract year.  Dkt. #61 at 9-10.  Plaintiff not only disputes that she was granted any special
22   privilege (Dkt. #65 ¶ 13), but has presented evidence showing that she was treated less
23   favorably than a male colleague during the tenure review process.  Plaintiff's conditional
24   contract for the 2004-2005 school year required that she (1) have her Pathologies manuscript
25   accepted for publication by December 31, 2004, (2) have at least four articles or book
26   chapters accepted for publication by January 15, 2005, and (3) complete her portion of a co-
27   authored book and submit it for publication by August 15, 2004.  Dkt. #65-7 at 24; *see* Dkt.
28   #62-7 at 69-70.  By contrast, the conditional contract of English assistant professor Peter

1 Goggin required only that he have one book manuscript accepted for publication by
2 November 2005 and two submitted articles or book chapters by December 2005. Dkt. #72-2
3 at 23; *see* Dkt. #65-7 at 22.

4       "[U]nder the *McDonnell Douglas* framework, 'the requisite degree of proof necessary
5 to establish a prima facie case for Title VII on summary judgment is minimal and does not
6 even need to rise to the level of a preponderance of the evidence.'" *Villiarimo v. Aloha*
7 *Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*,
8 26 F.3d 885, 889 (9th Cir. 1994)); *see Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220
9 (9th Cir. 1998). Indeed, "[t]he amount of evidence that must be produced in order to create
10 a prima facie case is 'very little.'" *Wallis*, 26 F.3d at 889 (citation and internal alterations
11 omitted); *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden
12 of establishing a prima facie case is not onerous."). The Court finds that Plaintiff has
13 presented evidence sufficient to satisfy the low threshold required to establish a prima facie
14 case of sex discrimination.

15       **B.**    **Plaintiff has established a triable issue of fact.**

16       "If the plaintiff establishes a prima facie case, the burden of production – but not
17 persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory
18 reason for the challenged action." *Villiarimo*, 281 F.3d at 1062. Once the employer fulfills
19 this burden of production, the "presumption of unlawful discrimination 'simply drops out of
20 the picture.'" *Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,
21 507 (1993)). "This is true even though there has been no assessment of the credibility of [the
22 employer] at this stage." *Id.* at 892 (citing *Burdine*, 450 U.S. at 254). Defendant asserts that
23 Plaintiff was denied tenure because her scholarly production at ASU was deficient and
24 students rated her a below average teacher. Dkt. #61 at 10-12. Defendant has sufficiently
25 articulated a legitimate, non-discriminatory reason for not granting Plaintiff tenure. *See*
26 *Lynn*, 656 F.2d at 1344.

27       If the employer sufficiently articulates a nondiscriminatory reason, the plaintiff "must
28 show that the articulated reason is pretextual 'either directly by persuading the court that a

1 discriminatory reason more likely motivated the employer or indirectly by showing that the
2 employer's proffered explanation is unworthy of credence.'" *Villiarimo*, 281 F.3d at 1062
3 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)). To establish
4 pretext, Plaintiff asserts (1) that she was more qualified than Goggin and yet he was granted
5 tenure and she was not, and (2) Dean Young was biased against her because of her sex as
6 reflected by his comment that she was ten years past her Ph.D despite knowing that she had
7 taken maternity leave while at Rice University, the stringent conditional contract
8 requirements he imposed, and his negatively skewed recommendation that tenure be denied.
9 Dkt. ##64 at 5-17, 65-10 ¶ 64. Plaintiff argues that Dean Young's discriminatory conduct
10 was an impediment to her receiving a fair tenure review at every level of the process. Dkt.
11 ##64 at 12-13, 65-10 ¶ 74; *see* Dkt. #1 ¶ 22.

12 Citing a case from the Seventh Circuit, *Sun v. Board of Trustees of the University of*
13 *Illinois*, 473 F.3d 799, 813 (7th Cir. 2007), Defendant contends that pretext is difficult to
14 show in academic tenure cases because the multiple, independent levels of review break the
15 connection between any possible discriminatory motive and the ultimate decision. Dkt. #61
16 at 13. This Circuit has made clear, however, that "discrimination at any stage of the
17 academic hiring or promotion process may infect the ultimate decision." *Lam v. Univ. of*
18 *Haw.*, 40 F.3d 1551, 1560 (9th Cir. 1994). A plaintiff "in a university discrimination case
19 need not prove intentional discrimination at every stage of the decision-making process;
20 impermissible bias at any point may be sufficient to sustain liability." *Id.*

21 Construing the evidence in the light most favorable to Plaintiff, as the Court must on
22 summary judgment, *see Anderson*, 477 U.S. at 255, the Court concludes that Plaintiff has
23 established a triable issue as to whether Dean Young discriminated against her because of
24 her sex. Dean Young recommended that Plaintiff receive a terminal contract for the 2004-
25 2005 school year, stating that Plaintiff's scholarly record was not sufficient to warrant
26 recommending a regular or conditional contract, "especially for a faculty member who is ten
27 years past her Ph.D." Dkt. #62-6 at 70. Defendant asserts that at the time Dean Young made
28 that comment he had no knowledge of whether Plaintiff had taken maternity leave. Dkt. #62

1    ¶ 73. Plaintiff asserts that Dean Young should have been aware of the fact that she took maternity leave at Rice University based on her curriculum vitae submitted during the fourth-year review process.  Dkt. #65 ¶ 73; *see* Dkt. #62-5 at 43-49.  "'[Q]uestions involving a person's state of mind are generally factual issues inappropriate for resolution by summary judgment.'"  *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) (quoting *Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)); *see Consol. Elec. Co. v. United States*, 355 F.2d 437, 438 (9th Cir. 1966).  Whether Dean Young was aware of Plaintiff's maternity leave when he recommended a terminal contract is a question for the jury.

Plaintiff asserts that her terminal contract for the 2004-2005 school year was changed to a conditional contract after she questioned whether her maternity leave was being counted against her in the tenure review process.  Dkt. #64 at 6-5; *see* Dkt. #62-6 at 74-75, 77.  Plaintiff argues that the conditional contract terms imposed on her by Dean Young are discriminatory when compared to the conditional contract Goggin received.  Dkt. #64 at 6-5.  The Court concludes that a jury reasonably could infer discriminatory intent on the part of Dean Young.  Plaintiff essentially was required to produce twice as much as Goggin.  *Compare* Dkt. #65-7 at 24 *with* Dkt. #72-2 at 23; *see Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.").

An inference of discriminatory intent on the part of Dean Young is supported by his apparent biased discussion of letters from outside reviewers who considered Plaintiff's scholarly work and candidacy for tenure.  Plaintiff was considered by eight outside reviewers.  Five of them found Plaintiff to be a superior candidate, one recommended her as a good candidate, and the other two provided no recommendation.  Dkt. ##65-4, 65-5, 65-7 at 4-7.  Positive comments by the outside reviewers include the following:  "Few scholars are of her formation or vision, and fewer still . . . are so eagerly generous with students and peers"; Milun is a "complex and creative thinker, an erudite and sophisticated intellectual"; Pathologies "is one of the most remarkable manuscripts written by a scholar under review

for tenure that I have encountered during my many years as a university professor"; "Given the quality of her word, Milun is virtually peerless"; Pathologies is "impressively executed and uncompromising reading"; Milun's work "exemplifies the very best of interdisciplinary scholarship"; Milun is a "very original careful, and passionate scholar whose work crosses the disciplinary boundaries in truly productive ways"; Milun "has the kind of intellectual integrity, rigor, depth, breadth, and open curiosity that makes the academy vital." *Id.* Despite these glowing recommendations, Dean Young concluded that Plaintiff's scholarly work "received mixed reviews by the external reviewers," noting that although "some praise the originality of her work, others are critical of its quality." Dkt. #62-7 at 53. The promotion and tenure committee concluded that in considering the outside reviewers' letters, Dean Young "appears to have ignored the praise of [Plaintiff's] book and to have selected every negative statement about the book, a far smaller percentage of the content of the letters than the positive comments." Dkt. #65-7 at 4. A jury reasonably could agree with that conclusion. Moreover, Plaintiff has presented evidence that Goggin ultimately was granted tenure even though the recommendations of his outside reviewers do not appear as favorable as those provided on behalf of Plaintiff. *Compare* Dkt. #65-7 at 2-8 *with* Dkt. #65-7 at 32-38.

Given the multiple levels of administrative review Plaintiff received, her less than favorable reviews by students, and the somewhat subjective nature of tenure decisions, the Court finds this to be a close case. The Court concludes, however, that Plaintiff has presented sufficient circumstantial evidence of discrimination to survive summary judgment. The law of this Circuit is that "'a plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.'" *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Chuang*, 225 F.3d at 1124); *see Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). "This is because 'the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record.'" *Chuang*, 225 F.3d at 1124 (quoting *Schindrig v. Columbia Mach., Inc.*, 80 F.3d

1406, 1410 (9th Cir. 1996)); *see Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991) ("[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact."); *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1986) (once a prima facie case of discrimination is made, "summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination'") (citation omitted); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732-33 (9th Cir. 1986) (an employer's "true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage") (citations omitted). The Court will deny Defendant's summary judgment motion with respect to Plaintiff's discrimination claim.

Defendant asserts that Plaintiff's students rated her a below-average teacher and she legitimately could have been denied tenure on that basis alone. Dkt. #61 at 10-12. An employer, however, does not escape liability under Title VII where "a protected characteristic was a 'motivating factor' in an employment action, even if there were other motives." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 848 (9th Cir. 2002).

## V.     Plaintiff's Retaliation Claim.

Plaintiff claims that the conditional contract she was offered for the 2004-2005 school year and the denial of a customary departure year following the tenure decision were adverse actions taken in retaliation for questioning whether her maternity leave was being used against her in the tenure review process. Dkt. #1 ¶¶ 9-14, 22-23; Dkt. #64 at 17. Title VII "prohibits retaliation against an employee 'because [she] has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, a plaintiff must show (1) that she engaged in protected activity, (2) that she suffered a materially adverse action, and (3) that there was a causal link between the protected activity and the adverse action. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "Thereafter,

1  the burden of production shifts to the employer to present legitimate reasons for the adverse
2  employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "Once
3  the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact
4  as to whether the reason advanced by the employer was a pretext. Only then does the case
5  proceed beyond the summary judgment stage." *Id.* (citation omitted).

6        Defendant concedes for purposes of its motion that Plaintiff's complaints constitute
7  protected activity under Title VII. Dkt. #61 at 14. Defendant argues that it is entitled to
8  summary judgment on the grounds that Plaintiff was not subjected to a materially adverse
9  action, there is no causal link between Plaintiff's complaints and the alleged retaliatory acts,
10 and ASU had legitimate reasons for the actions taken. *Id.* at 14-17.

11       Plaintiff does not address those arguments in her response. She instead contends that
12 summary judgment on her retaliation claim is not appropriate because the EEOC
13 determination letter found reasonable cause to believe she was a victim of retaliation.
14 Dkt. #64 at 17. Plaintiff "fails to point to a single case holding that a determination letter
15 from the EEOC is sufficient to create a genuine issue of material fact." *Mondero v. Salt*
16 *River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005). Plaintiff cites *Plummer v. Western*
17 *International Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981), for the proposition that an
18 EEOC determination letter may be a "highly probative evaluation" of an individual's
19 complaint. Dkt. #64 at 8. "The fact that a determination from the EEOC is highly probative,
20 however, does not support [Plaintiff's] contention that an EEOC determination letter is
21 somehow a free pass through summary judgment." *Mondero*, 400 F.3d at 1215. Moreover,
22 Plaintiff's EEOC letter contains only bare conclusions, and it is impossible to know from the
23 letter "what facts the EEOC considered and how it analyzed them." *Coleman v. Quaker Oats*
24 *Co.*, 232 F.3d 1271, 1284 (9th Cir. 2000). The letter therefore has "little probative value."
25 *Id.*

26       Summary judgment is appropriate against a party who "fails to make a showing
27 sufficient to establish the existence of an element essential to that party's case, and on which
28 that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Plaintiff has

1 failed to demonstrate a triable issue on the elements of her retaliation claim.  The Court will
2 therefore grant Defendant's summary judgment motion with respect to that claim.[2]

3 **IT IS ORDERED:**

4     1.    Defendant's motion for summary judgment (Dkt. #61) is **granted in part** and
5         **denied in part** as set forth in this order.

6     2.    The Court will set a final pretrial conference by separate order.

7 DATED this 2nd day of April, 2009.

_David G. Campbell_
David G. Campbell
United States District Judge

---

[2] Plaintiff notes that she has presented evidence showing that she was treated differently than Goggin during the tenure review process. Dkt. #64 at 17 n.11. While that evidence may be probative of discrimination, it does not show that Defendant retaliated against Plaintiff for complaining about the alleged discrimination.